1

2

3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

4

5

6

7

8

ELIZABETH CARLEY,

Plaintiff,

v.

NEVEN, *et al.*,

Defendants.

Case No. 2:17-CV-02346-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

[ECF No. 88]

9

10

11

12

13

14

15

16

        This case involves a civil rights action filed by Plaintiff Elizabeth Carley ("Carley") against Defendants Dwight Neven ("Neven"), Jo Gentry ("Gentry"), James Cox ("Cox"), James Dzurenda ("Dzurenda"), Romeo Aranas ("Aranas"), Beebe Clark ("Clark"), and Leilani Flores ("Flores") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 88, 90.)[2] Carley opposed the motion, (ECF Nos. 95, 97)[3], and Defendants replied. (ECF No. 99.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 88), be granted.

17

**I.        FACTUAL BACKGROUND**

18

19

20

21

22

23

24

        Carley is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). On September 6, 2017, Carley filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Carley was incarcerated at the Florence McClure Women's Correctional Center ("FMWCC"). (ECF Nos. 1, 5.) Specifically, Carley alleges an Eighth Amendment deliberate indifference to serious medical needs claim based on denial of treatment for Hepatitis C ("Hep-C"). (*Id.*)

25

26

[1]        This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

27

[2]        ECF No. 90 consists of Carley's medical records filed under seal.

28

[3]        ECF No. 97 consists of Carley's medical records filed under seal.

Hep-C is a blood borne pathogen transmitted primarily by way of percutaneous exposure to blood. Chronic Hep-C is diagnosed by a qualified medical practitioner. Chronic Hep-C results in liver fibrosis. (ECF No. 88-9 at 2 (Declaration of Dr. Minev).) Fibrosis is the initial stage of liver scarring. (*Id.*) Chronic Hep-C builds up fibrosis (scar tissue) in the afflicted person's liver. (*Id.*) When the fibrosis increases, it can lead to cirrhosis of the liver, a liver disease that forestalls common liver function. (*Id.*) When liver cells are not functioning, certain clinical signs will appear on the patient, which include but are not limited to: (1) spider angiomata (vascular lesions on the chest and body); (2) palmar erythema (reddening of the palms); (3) gynecomastia (increase in breast gland size); (4) ascites (accumulation of fluid in the abdomen); and (5) jaundice (yellow discoloration of the skin and mucous membranes). (*Id.*)

Medical Directive ("MD") 219 governs treatment of Hep-C at the NDOC. (*See* ECF No. 88 at 5.) At the time Carley filed her initial grievance related to her Hep-C treatment, inmates that tested positive for Hep-C were enrolled in the Infectious Disease Chronic Clinic for Hepatitis C. (*Id.*) A committee made up of at least three senior members of the medical department reviewed each Hep-C positive inmate and evaluated treatment options. (*Id.*)

A non-invasive method of procuring a patient's Chronic Hep-C progression, in addition with the clinical signs, is through the Aspartate Aminotransferase Platelet Ratio Index ("APRI") formula. (ECF No. 88-9 at 3.) To calculate a patient's APRI score, the patient's blood platelet count, which is obtained through a blood test, is necessary. (*Id.*) An APRI score is calculated using the AST to Platelet Ratio Index. (*Id.*) NDOC prioritized treatment based on an inmates APRI score. (ECF No. 88 at 5.) Inmates with an APRI score greater than 2 were prioritized for direct acting antiviral treatment ("DAA"). (*Id.*) DAA treatment, such as Epclusa, is an FDA-approved treatment for Hep-C. (ECF No. 88-2 at 17 (defining DAA).) Inmates with a score of less than 2 were not prioritized for the Hep-C DAA treatment protocols but did receive treatment and monitoring through the Hep-C Clinic. (ECF No. 88 at 5.)

1    The current version of MD 219 ensures each inmate has been or is tested for Hep-

2    C, and that those inmates who test positive, and who do not make the voluntary choice

3    to opt out of treatment, will be treated with DAAs. (ECF No. 88-2 at 16-21.) The policy

4    applies to all inmates unless there are medical issues that would make doing so cause

5    more harm. (*Id.*) MD 219 established three priority levels for DAA treatment. This priority

6    level system guarantees that all Hep-C patients will receive DAAs as needed and required

7    to treat their condition, while at the same time providing medical personnel with discretion

8    and flexibility to safeguard that those in a lower level of priority obtain expedited DAA

9    treatment when in the sound judgment of the medical provider examining the patient it is

10   determined that it is medically necessary. (*Id.* at 20.)

11   Carley was diagnosed with Hep-C in April of 2013. (ECF Nos. 90-1 at 12 (sealed);

12   97-1 at 44, 53 (sealed); 97-2 at 10 (sealed).) Carley was first enrolled in the NDOC

13   Chronic Disease Clinic for her Hep-C in June of 2014. (ECF No. 97-6 at 26 (sealed).)

14   Carley was regularly monitored and evaluated for disease progression through the

15   Chronic Disease Clinic. (ECF Nos. 90-1 (sealed); 97-6 at 26, 30-42 (sealed).)

16   On July 11, 2016, Carley filed an informal grievance asking for treatment for her

17   Hep-C. (ECF No. 88-1 at 3-4.) The response to the informal grievance by Defendant Clark

18   stated that Carley's lab values did not meet criteria for further action and her care plan

19   had regular follow-up labs and visits scheduled and thus, the grievance was denied. (*Id.*

20   at 5.) Carley appealed to the first level. (*Id.* at 9.) The response to the first level grievance

21   by Defendant Flores again stated Carley's lab values did not meet criteria for further

22   treatment or medication and that Carley was enrolled in the Chronic Clinic and was being

23   monitored accordingly. (*Id.* at 8.) Carley appealed to the second level. (*Id.* at 11-12.) In

24   response to the second level grievance, Defendant Aranas stated that the Hep-C

25   treatment is based on the Bureau of Prisons guidelines. Carley's APRI score of 1.3 did

26   not require treatment at that time and she was being monitored through the Chronic Clinic.

27   (*Id.* at 10.)

28   ///

3

Blood tests conducted in July 2016 revealed an APRI score of 1.38. (ECF No. 90-2 at 3 (sealed).) Lab work conducted in July 2018 revealed a Fibrosis score of 0.30, with Fibrosis Stage F1 - portal fibrosis. (ECF No. 90-4 at 2 (sealed).) On April 1, 2019, an ultrasound of Carley's liver and gallbladder was conducted. (ECF Nos. 90-3 at 4 (sealed); 97-5 at 4 (sealed).) The ultrasound was "unremarkable." (*Id.*)  Additionally, the liver was normal size, echotexture, and contour with no hepatic lesions. The main portal vein measured 14.0 mm in diameter. No ascites or pleural effusion was present. (*Id.*)

On January 26, 2021, Carley was approved for Hep-C treatment. (ECF Nos. 90-6 (sealed); 97-6 (sealed).) The Hep-C patient data form noted a FibroSure score of 0.54 for lab work performed on August 4, 2020. (*Id.* at 3.) On February 25, 2021, another abdominal ultrasound was performed. (ECF Nos. 90-3 at 2-3 (sealed); 97-5 at 2-3 (sealed).) The ultrasound was "unremarkable". (*Id.*) Additionally, the liver was normal size, echotexture, and contour with no hepatic lesions. The main portal vein measured 12.0 mm in diameter. No ascites or pleural effusion was present. (*Id.*) On May 17, 2021, an upper GI endoscopy "EGD" was performed through outside medical provider Digestive Disease Center, which showed normal esophagus, stomach, and duodenum. (ECF No. 97-4 at 2 (sealed).) The next day, Carley was started on DAA treatment, Epclusa. (ECF No. 97-7 at 2 (sealed).) Lab results dated June 15, 2021, September 27, 2021, and November 16, 2021, show no detectable Hep-C in Carley's blood. (ECF No. 90-7 (sealed).)

Michael Minev, NDOC's current Medical Director, filed a declaration in support of the motion for summary judgment, stating as follows: if a patient's APRI score is above 0.5, there is likely some liver damage (fibrosis) and if the APRI score is above 1.5, the patient likely has or is quickly approaching cirrhosis of the liver. The APRI score is not definitive but is a reliable indicator of liver fibrosis. As part of his duties, Minev oversees the Chronic Hep-C treatment program at NDOC. He has reviewed test results and medical records of NDOC inmates to determine who required advanced forms of Hep-C treatment. In addition to APRI scores, Minev also considers the inmates' clinical signs of

4

forestalled or reduced liver function. He almost always declined to recommend an NDOC inmate with Hep-C, who has an APRI score near or below 1.0 for advanced forms of Hep-C treatment due to risk that drug intervention may cause to a patient with Hep-C. All inmates who test positive for Hep-C and are otherwise medically indicated receive advanced treatment. (ECF No. 88-9.)

Moreover, as to Carley specifically, Minev stated he reviewed Carley's medical records and can attest that Carley suffered from Chronic Hep-C and her APRI score, based on blood test results in July 2016, was 1.3. Carley did not exhibit any symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. Based on Carley's APRI score and lack of clinical signs indicating decreased liver function, Carley was not a candidate for Hep-C treatment at the time of her grievance. Carley has since received the advanced treatment and currently shows no HCV in her system. (ECF No. 88-9 at 4.)

Defendant Clark, former Correctional Nurse for the NDOC, and Defendant Flores, current Chief of Nursing Services for the NDOC, each filed a declaration in support of the motion for summary judgment, stating they do not recall having direct interactions with Carley during their tenure with the NDOC, however they never determined whether Carley qualified for Hep-C treatment. Clark and Flores did not deny medical care to Carley and cannot speculate on any kind of treatment as they did not examine Carley. As a nurse, Clark did not personally deny treatment to inmates as those decisions were made by the Hep-C Review Panel or the Utilization Review Panel. Other than responding to Carley's first level grievance, Clark and Flores did not have professional contact with Carley and did not examine or treat her in any way. In responding to the grievance, Clark and Flores notified Carley that pursuant to the Medical Directive, she was not prioritized for treatment as she did not meet criteria for Hep-C treatment in 2016. (ECF Nos. 88-3, 88-8.)

Defendants Neven and Gentry, former Wardens at FMWCC, each filed a declaration in support of the motion for summary judgment stating they never had contact with Carley, nor were they aware of her condition. Neven and Gentry did not respond to

any grievances on this matter. They were not part of any committee that could have ordered treatment to Carley. The Medical Director of NDOC is responsible for care of the inmates. As Warden, Neven and Gentry was not responsible for the formulation of Medical Directives, and they had no authority to order HCV treatment for Carley. (ECF Nos. 88-4, 88-7.)

Defendants Cox and Dzurenda, former NDOC Directors, each filed a declaration in support of the motion for summary judgment stating they never had contact with Carley, nor were they aware of her condition. Cox and Dzurenda did not respond to any grievances on this matter. They were not part of any committee that could have ordered treatment to Carley. The Medical Director of NDOC is responsible for care of the inmates. As Director, Cox and Dzurenda were not responsible for the formulation of Medical Directives, and they had no authority to order HCV treatment for Carley. (ECF Nos. 88-5, 88-6.)

Defendant Aranas, former Medical Director for the NDOC, filed a declaration in support of the motion for summary judgment, stating as NDOC Medical Director, he was responsible for the formulation of health policy regarding the health care delivery system, including developing and monitoring standards and procedures for health care services for all inmates confined within the facilities and the clinical operation of the NDOC medical division. Aranas did not deny medical care to Carley. He cannot speculate on any kind of treatment as he did not examine her. As Medical Director, Aranas did not personally deny treatment to inmates, those decisions were made by the Utilization Review Panel. Other than responding to grievances, Aranas had not personal contact with Carley to his knowledge and he did not examine her or treat her in any way. (ECF No. 88-10.)

In support of her opposition to the motion for summary judgment, Carley includes the expert report of Dr. Robert Gish. (ECF No. 95-4.) Dr. Gish's report focuses primarily on NDOC's Hep-C policy and the standard of care for Hep-C treatment generally. Importantly, Dr. Gish's report does not address whether Carley suffered any harm based on, or because of, the delay in Carley's treatment for Hep-C.

## II.     PROCEDURAL HISTORY

On September 6, Carley initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Carley was incarcerated at FMWCC. (ECF Nos. 1, 5.) On screening, the District Court permitted Carley to proceed with her complaint, which alleges an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants. (ECF No. 4.)

Around the same time Carley filed her complaint, many other individuals in the custody of the NDOC filed similar actions alleging that NDOC's policy for treating Hep-C amounts to deliberate indifference in violation of the Eighth Amendment. (ECF No. 57.) As a result, the Court consolidated numerous actions, including Carley's case, for the purpose of conducting consolidated discovery. (*Id.; see also In Re Hep-C Prison Litigation*, 3:19-CV-00577-MMD-CLB.)

Following an additional period of discovery, on April 21, 2022, Defendants filed their motion for summary judgment arguing Carley cannot prevail as: (1) Carley was treated appropriately and in accordance with the medical directives and standards of care; (2) Defendants were not Carley's treating physician and thus did not personally participate in the alleged constitutional violations; and (3) Defendants are entitled to qualified immunity. (ECF No. 88.) Carley opposed the motion, (ECF No. 95), and Defendants replied. (ECF No. 99.)

## III.     LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where

1    a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

2        The parties subject to a motion for summary judgment must: (1) cite facts from the

3    record, including but not limited to depositions, documents, and declarations, and then

4    (2) "show[] that the materials cited do not establish the absence or presence of a genuine

5    dispute, or that an adverse party cannot produce admissible evidence to support the fact."

6    Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be

7    authenticated, and if only personal knowledge authenticates a document (i.e., even a

8    review of the contents of the document would not prove that it is authentic), an affidavit

9    attesting to its authenticity must be attached to the submitted document. *Las Vegas*

10   *Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements,

11   speculative opinions, pleading allegations, or other assertions uncorroborated by facts

12   are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v.*

13   *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

14       The moving party bears the initial burden of demonstrating an absence of a

15   genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the

16   burden of proof on an issue at trial, the movant must affirmatively demonstrate that no

17   reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d

18   at 984. However, if the moving party does not bear the burden of proof at trial, the moving

19   party may meet their initial burden by demonstrating either: (1) there is an absence of

20   evidence to support an essential element of the nonmoving party's claim or claims; or (2)

21   submitting admissible evidence that establishes the record forecloses the possibility of a

22   reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco*

23   *Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz*

24   *Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any

25   inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v.*

26   *Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its

27   burden for summary judgment, the nonmoving party is not required to provide evidentiary

28   materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477

U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in

the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## IV.    DISCUSSION

On April 21, 2022, Defendants filed their motion for summary judgment arguing Carley cannot prevail as: (1) Carley was treated appropriately and in accordance with the medical directives and standards of care; (2) Defendants were not Carley's treating physician and thus did not personally participate in the alleged constitutional violations; and (3) Defendants are entitled to qualified immunity. (ECF No. 88.) In opposition, Carley asserts that all Defendants denied her Hep-C treatment for years—a medically unacceptable course of treatment under the circumstances—and did so knowing the excessive risks to her health. (ECF No. 95.)

### A.    Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a

"serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists and make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the

treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

### 1.    Analysis

Starting with the objective element, the parties agree that Carley's Hep-C constitutes a "serious medical need." However, Defendants argue summary judgment should be granted because Carley cannot establish the second, subjective element of her claim. Specifically, Defendants argue they were not deliberately indifferent to Carley's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Carley's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Carley to "demonstrate that the defendants' actions were both an actual and proximate cause of [her] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098- 1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, as detailed above, Defendants submitted authenticated and undisputed evidence regarding the medical treatment Carley received while incarcerated related to her Hep-C. (*See* ECF Nos. 90-1, 90-2, 90-3, 90-4, 90-5, 90-6, 90-7 (sealed).) According to this evidence, Carley was first enrolled in the NDOC Chronic Disease Clinic for her Hep-C in June of 2014. (ECF No. 97-6 at 26 (sealed).) Carley was regularly monitored and evaluated for disease progression through the Chronic Disease Clinic. (ECF Nos. 90-1 (sealed); 97-6 at 26, 30-42 (sealed).)

Blood tests conducted in July 2016 revealed an APRI score of 1.38. (ECF No. 90-2 at 3 (sealed).) Lab work conducted in July 2018 revealed a Fibrosis score of 0.30, with Fibrosis Stage F1 - portal fibrosis. (ECF No. 90-4 at 2 (sealed).) On April 1, 2019, an

ultrasound of Carley's liver and gallbladder was conducted. (ECF Nos. 90-3 at 4 (sealed); 97-5 at 4 (sealed).) The ultrasound was "unremarkable." (*Id.*)  Additionally, the liver was normal size, echotexture, and contour with no hepatic lesions. The main portal vein measured 14.0 mm in diameter. No ascites or pleural effusion was present. (*Id.*)

On January 26, 2021, Carley was approved for Hep-C treatment. (ECF Nos. 90-6 (sealed); 97-6 (sealed).) The Hep-C patient data form noted a FibroSure score of 0.54 for lab work performed on August 4, 2020. (*Id.* at 3.) On February 25, 2021, another abdominal ultrasound was performed. (ECF Nos. 90-3 at 2-3 (sealed); 97-5 at 2-3 (sealed).) The ultrasound was "unremarkable". (*Id.*) Additionally, the liver was normal size, echotexture, and contour with no hepatic lesions. The main portal vein measured 12.0 mm in diameter. No ascites or pleural effusion was present. (*Id.*) On May 17, 2021, an upper GI endoscopy "EGD" was performed through outside medical provider Digestive Disease Center, which showed normal esophagus, stomach, and duodenum. (ECF No. 97-4 at 2 (sealed).) The next day, Carley was started on DAA treatment, Epclusa. (ECF No. 97-7 at 2 (sealed).) Lab results dated June 15, 2021, September 27, 2021, and November 16, 2021, show no detectable HCV in Carley's blood. (ECF No. 90-7 (sealed).)

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively monitored and ultimately treated Carley's Hep-C. Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Carley to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to her medical needs. *Nissan*, 210 F.3d at 1102.

Carley's opposition primarily focuses on MD 219 and her assertion that medical standards required immediate treatment. (ECF No. 95 at 14-17.) Carley's opposition reiterates her claim, that "NDOC policies and procedures between 2014 and 2017, whereby the vast majority of inmates with chronic hepatitis C were not treated with DAAs,

1   subjects those inmates who are not treated, including [] Carley, to a 'substantial risk of
2   serious harm.'" (*Id.* at 18-19.) Carley's focus on the standard of care, which is akin to a
3   medical malpractice standard, is <u>not</u> the constitutional deliberate indifference standard.
4   *See Estelle*, 429 U.S. 97. To prove deliberate indifference, however, Carley must show
5   that a delay in treatment <u>caused</u> further injury. *See Jett*, 439 F.3d at 1096. A delay in
6   providing medical treatment can violate the constitution if it results in <u>injury</u>. *See Shapley*
7   *v. Nevada Bd. of State Prison Com'rs*, 766 F.2d 404 (9th Cir. 1985). Carley's own expert
8   does not allege that she sustained damage because of the alleged delay but instead
9   makes a conclusory statement that the delay presented a substantial <u>risk of serious harm</u>
10  <u>generally</u>. (*See* ECF No. 95-4 at 10.) There is no evidence presented that Carley was
11  <u>actually harmed or injured</u> by the alleged delay in treatment.

12      Aside from her own assertions, Carley provides no further evidence or support that
13  a delay in treatment for her Hep-C <u>caused</u> her any damage. She has not come forward
14  with evidence to show Defendants knew of an excessive risk to her health and
15  disregarded that risk. The evidence before the Court shows Carley was treated for her
16  Hep-C through monitoring and other actions and there is no evidence showing that her
17  Hep-C or any delay in providing treatment was <u>the cause</u> of any damage. Therefore,
18  Carley has failed to meet her burden on summary judgment to establish that prison
19  officials were deliberately indifferent to her medical needs as she failed to come forward
20  with any evidence to create an issue of fact as to whether Defendants deliberately denied,
21  delayed, or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744.

22      Based on the above, the Court recommends that Defendants' motion for summary
23  judgment as to the medical deliberate indifference claim be granted.[4]

24  **V.    CONCLUSION**

25      For good cause appearing and for the reasons stated above, the Court
26  recommends that Defendants' motion for summary judgment, (ECF No. 88), be granted.

27
_____

28  [4]    Because the Court finds that Carley's claim fails on the merits, the Court need not
address Defendants' personal participation or qualified immunity arguments.

1    The parties are advised:

2    1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

3    Practice, the parties may file specific written objections to this Report and

4    Recommendation within fourteen days of receipt. These objections should be entitled

5    "Objections to Magistrate Judge's Report and Recommendation" and should be

6    accompanied by points and authorities for consideration by the District Court.

7    2.    This Report and Recommendation is not an appealable order and any

8    notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the

9    District Court's judgment.

10   **VI.    RECOMMENDATION**

11   **IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary

12   judgment, (ECF No. 88), be **GRANTED**; and,

13   **IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of

14   Defendants and **CLOSE** this case.

15   **DATED** this 3rd day of November, 2022.

16

17   _____
     **UNITED STATES MAGISTRATE JUDGE**

18

19

20

21

22

23

24

25

26

27

28