1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ELIZABETH CARLEY,

                            Plaintiff,

        v.

WARDEN NEVEN, *et al.*,

                            Defendants.

Case No. 2:17-cv-02346-MMD-CLB

ORDER

## I.    SUMMARY

Plaintiff Elizabeth Carley, who is an inmate at Florence McClure Women's Correctional Center ("FMWCC") and represented by counsel, brings this action under 42 U.S.C. § 1983 against Defendants Romeo Aranas, Beebe Clark, James Cox, James Dzurenda, Leilani Flores, Jo Gentry, and Dwight Neven. (ECF No. 20.) Before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Carla L. Baldwin (ECF No. 101), recommending the Court grant Defendants' motion for summary judgment (ECF No. 88 ("Motion"))[1] and close the case. Plaintiff filed an objection to the R&R.[2] (ECF No. 102 ("Objection").) As further explained below, the Court will reject the R&R because there is a genuine dispute of material fact as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs by delaying her Hepatitis C ("Hep-C") treatment. However, the Court will dismiss most Defendants, as detailed herein, because they undisputedly lack personal participation in the alleged Eighth Amendment

---

[1]Plaintiff responded (ECF No. 95) and Defendants replied (ECF No. 99) to the Motion. Each party also submitted sealed medical records as exhibits to their briefs (ECF Nos. 90, 97).

[2]Defendants responded to Plaintiff's Objection. (ECF No. 103.)

violation.[3] Accordingly, the Court will overrule in part and sustain in part Plaintiff's Objection and grant in part and deny in part Defendants' Motion.

## II.   BACKGROUND

The Court incorporates by reference and adopts Judge Baldwin's description of the case's factual background and procedural history provided in the R&R. (ECF No. 101 at 1-7.)

## III.   DISCUSSION

The Court will first reject the R&R because there is a genuine dispute of material fact as to whether Defendants were deliberately indifferent in treating Plaintiff's Hep-C. The Court will then dismiss specific Defendants because they did not personally participate in the alleged Eighth Amendment violation. Finally, the Court will deny Defendants' Motion as to the qualified immunity issue because there is still a genuine dispute regarding whether the remaining Defendant, Romeo Aranas, was deliberately indifferent to Plaintiff's serious medical needs.

### A.   Eighth Amendment Deliberate Indifference Analysis

To start, Plaintiff objects to Judge Baldwin's recommendation that the Motion should be granted for Plaintiff's Eighth Amendment deliberate indifference claim. (ECF No. 102 at 5.) In the R&R, Judge Baldwin found that Plaintiff was ultimately treated for her Hep-C and failed to show that the alleged treatment delay caused any damage. (ECF No. 101 at 13-14.) Plaintiff argues that the denial and delay of treatment was medically unacceptable, caused her fibrosis to progress, and caused her to suffer worsening Hep-C symptoms. (ECF No. 102 at 5-13.) The Court agrees with Plaintiff and rejects Judge Baldwin's R&R.

To establish an Eighth Amendment violation for deliberate indifference to an inmate's serious medical needs, a plaintiff must satisfy both an objective standard—that

---

[3]In the R&R, Judge Baldwin declined to address Defendants' personal participation and qualified immunity arguments Motion because she found that Plaintiff's claim failed on the merits. (ECF No. 101 at 14 n.4.) However, Plaintiff addresses the personal participation issue in her Objection. (ECF No. 102 at 14.)

1  the deprivation was serious enough to constitute cruel and unusual punishment—and a

2  subjective standard—deliberate indifference."[4] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th

3  Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

4  To satisfy the subjective prong, the prison official must be "both be aware of facts from

5  which the inference could be drawn that a substantial risk of serious harm exists . . . [and]

6  also draw the inference." *Peralta*, 744 F.3d at 1086 (citation omitted). The prison official

7  is not liable if he knew of the substantial risk and acted reasonably, which is contingent

8  on the circumstances that "normally constrain what actions a state official can take." *Id.*

9  at 1082 (citation omitted).

10      When a prisoner alleges that delay of medical treatment evinces deliberate

11  indifference, the prisoner must show that the delay led to further injury. *See Shapley v.*

12  *Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Moreover, "[a]

13  difference of opinion between a prisoner-patient and prison medical authorities regarding

14  treatment" is insufficient. *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344

15  (9th Cir. 1981) (citations omitted). Instead, the plaintiff must show that the treatment

16  course "was medically unacceptable under the circumstances" and chosen "in conscious

17  disregard of an excessive risk to plaintiff's health." *Toguchi v. Chung*, 391 F.3d 1051,

18  1058 (9th Cir. 2004) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996),

19  *overruled in part on other grounds by Peralta*, 744 F.3d 1076).

20      Although Defendants submitted some evidence of normal or "unremarkable" test

21  results, Plaintiff has presented other evidence that raises a genuine dispute as to whether

22  Defendants were deliberately indifferent and whether she was further harmed by the

23  treatment delay. First and foremost, Plaintiff's medical records and clinical symptoms

24  suggest that she suffered liver damage because of the treatment delay. According to Dr.

25  Minev, the current NDOC Medical Director, an APRI score above .5 "likely indicates some

26  liver damage (fibrosis)" but "[i]f the APRI score is above 1.5, the patient likely has, or is

27

28  [4]The Court will focus its analysis on the subjective prong since the parties agree
   that Hep-C constitutes a serious medical need.

3

1   quickly approaching, cirrhosis of the liver."[5] (ECF No. 88-9 at 3.) The NDOC's Medical

2   Directive ("MD") 219[6] provides that an APRI score of greater than .7 is "[e]vidence for

3   progressive fibrosis."[7] (ECF No. 88-2 at 20.) Notably, Plaintiff had an APRI score of 1.9

4   in May 2016, which surpassed the 1.5 threshold, and her other scores were very close to

5   this figure—1.4 in November 2016, and 1.3 in January 2017. (ECF Nos. 90-1 at 10, 97-1

6   at 33, 97-2 at 7.) Most of Plaintiff's APRI scores from 2013, when she was first diagnosed

7   with Hep-C, to 2021, when she finally received the direct acting anti-viral ("DAA") drugs,[8]

8   ranged from .7 to 1.9—which supports that Plaintiff was suffering from progressive fibrosis

9   and was approaching or close to cirrhosis. (ECF Nos. 90-1 at 4-12, 97-1 at 33, 97-2 at 4-

10  7, 97-7 at 2.) When viewed in the light most favorable to Plaintiff, a reasonable jury could

11  find that Plaintiff suffered liver damage and was approaching cirrhosis by the time she

12  finally received DAA treatment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-

13  51 (1986) (Summary judgment is not appropriate where reasonable minds could differ on

14

15       [5]Dr. Minev explains that the Aspartate Aminotransferase Platelet Ratio Index
16  ("APRI") Formula is a "non-invasive method of procuring a patient's Chronic Hepatitis-C
    progression, in addition to the clinical signs." (ECF No. 88-9 at 3.)

17       [6]MD 219 was the protocol that governed NDOC's treatment of Hep-C for inmates
18  at the time of Plaintiff's grievance. According to Defendants, a "committee made up of at
    least three senior member[s] of the medical department reviewed each HCV positive
19  inmate and evaluated treatment options" and the "NDOC prioritized treatment based on
    an inmates APRI score." (ECF No. 88 at 5.) Inmates with a APRI score below 2.0 did not
20  receive priority for DAA treatment. (*Id*. at 8.) MD 219 has since been updated, following
    a consent decree, where inmates with Hep-C "who do not make the voluntary choice to
21  opt out of treatment, will be treated with DAAs. This applies to all inmates unless there
    are medical issues that would make doing so cause more harm." (*Id*. at 5-6.)

22       [7]According to Dr. Minev, fibrosis is liver scarring and as chronic Hep-C "builds up
23  fibrosis (scar tissue) in the afflicted person's liver" and as "fibrosis increases, it can lead
    to cirrhosis of the liver, a liver disease that forestalls common liver function." (ECF No.
24  88-9 at 2.)

25       [8]Dr. Robert Gish, Plaintiff's expert, explains that the "goal of treating an HCV
    infection with Direct Acting Antivirals ("DAAs") is to cure HCV disease and address any
26  effect the HCV infection has already had on the liver, as well as to relieve extrahepatic
    manifestations of the disease, mitigate the risk of future adverse health outcomes such
27  as cirrhosis, liver cancer, liver transplant and extrahepatic disease, and prevent
    transmission and reinfection." (ECF No. 95-4 at 7.) FDA-approved DAA treatment for
28  Hep-C "may include, without limitation, Epclusa (sofosbuvir/velpatasvir) or Mavyret
    (glecaprevir/pibrentasvir)." (ECF No. 88-2 at 17.)

4

1    the material facts at issue); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d

2    1100, 1103 (9th Cir. 1986) (citation omitted) (In evaluating a summary judgment motion,

3    a court views all facts and draws all inferences in the light most favorable to the

4    nonmoving party).

5           Next, there is a genuine dispute regarding Plaintiff's stage of fibrosis when she

6    finally received DAA treatment. According to Dr. Robert Gish,[9] Plaintiff's expert, a F0 or

7    FI score indicates a lack of or minimal scarring, F2 indicates an intermediate stage of

8    fibrosis or liver scarring, F3 indicates severe/bridging fibrosis, and F4 indicates cirrhosis

9    or advanced liver scarring. (ECF No. 95-4 at 6.) By August 2020, Plaintiff's medical

10   records indicate that she was at the F2 stage or intermediate scarring. (ECF Nos. 90-1 at

11   3.) By 2021, Dr. Gish opines that Plaintiff reached F3 fibrosis or severe scarring because

12   her ultrasound showed an enlarged portal vein or portal vein dilation which is consistent

13   with F3 scarring. (ECF Nos. 90-3 at 2, 95-4 at 21.) Hence, a reasonable jury could find

14   that Plaintiff progressed to the F3 stage and suffered severe liver scarring by the time she

15   received DAA treatment. *See Anderson*, 477 U.S. at 248-51; *Kaiser*, 793 F.2d at 1103.

16          Additionally, Plaintiff contends that the treatment delay caused her to endure

17   painful Hep-C symptoms that affected her quality of life. (ECF No. 95 at 8-10.) Plaintiff's

18   argument is supported by her medical records, where she repeatedly complained of

19   jaundice, nausea, frequent abdominal pain, night sweats, weakness, depression, severe

20   fatigue, and insomnia. (ECF Nos. 97-2 at 7, 97-3 at 4, 14-15, 23, 97-6 at 25.) Dr. Gish

21   confirmed that Plaintiff's symptoms are common in individuals with chronic Hep-C. (ECF

22   No. 95-4 at 4.) Plaintiff's years-long medical records also revealed that her Hep-C

23   symptoms were getting worse, and her condition was deteriorating. By 2021, Plaintiff

24   reported that she was so fatigued that she "could barely get out of bed." (ECF No. 97-3

25   at 4, 14-15.) Despite Plaintiff's worsening Hep-C symptoms, she did not receive DAA

26   treatment until 2021—eight years after her initial Hep-C diagnosis. (ECF Nos. 90-1 at 12,

27   _____

28          [9]Dr. Robert Gish is a medical doctor and researcher who specializes in the field of viral hepatitis, and the diagnosis and treatment of liver disease. (ECF No. 95-4 at 2.)

97-7 at 2.) When viewed in the light most favorable to Plaintiff, a reasonable jury could find that Defendants knew of the substantial risks to Plaintiff's health and failed to act reasonably. *See Anderson*, 477 U.S. at 248-51; *Kaiser*, 793 F.2d at 1103; *see also Peralta*, 744 F.3d at 1086. A reasonable jury could conclude that the years-long delay in Hep-C treatment caused Plaintiff to suffer severe liver scarring/damage and painful symptoms. *See Shapley*, 766 F.2d at 407.

The fact that Plaintiff finally received DAA treatment in 2021 and has no detectable HCV in her blood does not change the Court's analysis. (ECF Nos. 88 at 3, 90-7 at 2.) There remains a genuine dispute as to whether the harm Plaintiff sustained during the years-long delay is reversible or permanent. Plaintiff describes her Hep-C symptoms as "ongoing," despite receiving DAA treatment. (ECF No. 95 at 12.) Dr. Gish explained that the risk of liver cancer "is so significant" once a person reaches F3 or F4 fibrosis that even after he or she receives DAA treatment, the individual still needs to undergo annual liver imaging for surveillance. (ECF No. 95-4 at 18.) Most importantly, it is not the role of the Court to determine the truth of whether Plaintiff incurred lasting harm at summary judgment—the Court need only decide whether reasonable minds could differ as to an issue when interpreting the record. *See Anderson*, 477 U.S. at 249, 255 (citation omitted); *see also Melnik v. Aranas*, Case No. 20-15471, 2021 WL 5768468, at *1 (9th Cir. Dec. 6, 2021) (finding that "the extent of the harm caused by the delay is a disputed question of fact not appropriately answered at [the summary judgment] stage"). Here, in viewing the evidence, reasonable minds could differ as to whether Plaintiff sustained irreversible liver damage.

Finally, the Court is unpersuaded by Defendants' argument that Plaintiff's Hep-C treatment constituted a mere difference in opinion between Plaintiff and medical staff. (ECF No. 88 at 8.) *See Franklin*, 662 F.2d at 1344. Plaintiff provides sufficient evidence, where a reasonable jury could find that the treatment was "medically unacceptable under the circumstances," and in violation of the Eighth Amendment. *See Toguchi*, 391 F.3d at 1058 (citation omitted). As explained above, Plaintiff's test results indicated that she had

6

1    severe liver scarring and was quickly approaching cirrhosis; her medical records also

2    illustrate her painful and worsening Hep-C symptoms. (ECF Nos. 90-1 at 10, 97-1 at 33,

3    97-2 at 7, 97-3 a 4, 14-15.) Dr. Gish explained that NDOC's policy of prioritizing DAA

4    treatment based on inmates' APRI scores contravened national and community

5    guidelines, dating back to 2015, which recommended that "*all* patients with chronic HCV

6    infection except those with short life expectancies" received DAA treatment. (ECF No. 95-

7    4 at 10 (emphasis added).) Because the community standard of care outside the prison

8    context is "*highly relevant*" in determining "what care is medically acceptable and

9    unacceptable," a reasonable jury could find that Defendants' policy of delaying care was

10   medically unacceptable and in conscious disregard of an excessive risk to Plaintiff's

11   health, violating the Eighth Amendment. *See Balla v. Idaho*, 29 F.4th 1019, 1026 (9th Cir.

12   2022) (emphasis added, citations omitted); *Toguchi*, 391 F.3d at 1058 (citation omitted).

13          Accordingly, the Court rejects Judge Baldwin's R&R, denies Defendants' Motion

14   in part as to Plaintiff's Eighth Amendment deliberate indifference claim, and sustains

15   Plaintiff's Objection as to this claim.

16          **B.      § 1983 Personal Participation[10]**

17          Next, Defendants argue that they did not personally participate in the alleged

18   Eighth Amendment violation and did not have the authority to direct Plaintiff's medical

19   treatment. (ECF No. 88 at 8-9.) Plaintiff counters that Defendants are liable because they

20   either responded to her grievances or made and implemented harmful Hep-C policies

21   that denied her care. (ECF No. 95 at 25-28.) The Court agrees that summary judgment

22   should be granted as to most Defendants for lack of personal participation.

23          A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal

24   participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation

25   omitted). A person deprives another "of a constitutional right, within the meaning of

26

27          [10]As noted above, the Court will independently address Defendants' personal
28   participation and qualified immunity arguments, as Judge Baldwin declined to address
     these issues in the R&R because she found that Plaintiff's claim failed on the merits. (ECF
     No. 101 at 14 n.4.)

section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in original, citation omitted). A supervisor is liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation omitted); *see also Melnik*, 2021 WL 5768468, at *1 (citations omitted). A defendant is also liable if he or she personally reviewed and responded to the plaintiff's grievance about the alleged constitutional deprivation, was aware of the plaintiff's condition and alternative recommendations, but still failed to prevent further harm. *See Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014); *Snow*, 681 F.3d at 989. However, "merely denying a grievance without some decision-making authority or ability to resolve the underlying issue grieved is not enough to establish personal participation." *Countryman v. Sherman*, Case No. C19-01767-JCC-SKV, 2022 WL 17406341, at *10 (W.D. Wash. Oct. 21, 2022) (citations omitted).

To start, Plaintiff argues that Cox, Dzurenda, Gentry, and Neven personally participated based on their positions as former NDOC directors or FMWCC wardens who are broadly responsible for accepting, implementing, and furthering NDOC policies. (ECF No. 95 at 5-6, 26-28.) The Court disagrees. In their declarations, Defendants state that they were not responsible for formulating any medical directives or directing treatment for Plaintiff's Hep-C. (ECF Nos. 88-4, 88-5, 88-6, 88-7.) *See Starr*, 652 F.3d at 1207 (citation omitted). Plaintiff fails to provide any evidence that Cox, Dzurenda, and Gentry personally reviewed or responded to her grievances for Hep-C treatment, were aware of her specific condition, and aware that she needed additional treatment. (ECF No. 95.) *See Colwell*, 763 F.3d at 1070; *Snow*, 681 F.3d at 989. The mere fact that these Defendants were former Directors or Wardens at NDOC, without more, does not suffice for § 1983 personal participation. As to Neven, Plaintiff points to a one-sentence allegation in her verified

8

1   Complaint that during a September 28, 2018, mediation conference for this case, Neven

2   refused to provide Hep-C treatment "unless [Plaintiff] became sicker." (ECF Nos. 20 at 7,

3   95 at 6.) Plaintiff's terse, conclusory statement about Neven, without more, does not

4   suffice for personal participation. *See Anderson*, 477 U.S. at 252 ("The mere existence of

5   a scintilla of evidence in support of the plaintiff's position will be insufficient").

6        Unlike in *Colwell* and *Snow*, Plaintiff does not provide any information regarding

7   what Neven knew as to the specific details of Plaintiff's disease, his knowledge about the

8   seriousness or progression of her disease, his knowledge about alternative

9   recommendations for DAA treatment, and whether he even reviewed any of Plaintiff's

10   grievances regarding the inappropriate medical treatment. *See Colwell*, 763 F.3d at 1070

11   (finding that summary judgment was not appropriate because the NDOC Medical Director

12   "personally denied Colwell's second-level grievance even though he was aware that an

13   optometrist had recommended surgery and that Colwell's lower-level grievances had

14   been denied despite that recommendation"); *Snow*, 681 F.3d at 989 (finding that the

15   warden and associate warden were not entitled to summary judgment because they were

16   aware of Snow's serious hip condition, aware that Snow needed surgery because they

17   personally reviewed a "no-kneel" order which explicitly stated that he needed hip surgery,

18   and still failed to act to prevent further harm). Accordingly, the Court grants summary

19   judgment in favor of Defendants Cox, Dzurenda, Gentry, and Neven based on their lack

20   of personal participation.[11]

21        Second, Plaintiff argues that Defendants Flores, the Chief of Nursing Services at

22   NDOC, and Clark, a Correctional Nurse at NDOC, should remain in this lawsuit because

23   they denied her grievances for Hep-C treatment. (ECF No. 95 at 2-4, 26.) The Court

24

25        [11]The Ninth Circuit has held that a current warden or NDOC director are appropriate defendants in a plaintiff's claim for injunctive relief because they "would be responsible for ensuring that injunctive relief was carried out," even when they were not

26   personally involved. *See Colwell*, 763 F.3d at 1070 (citation omitted). The current FMWCC Warden and NDOC Director do not appear to be named Defendants in this

27   lawsuit. (ECF No. 20.) However, even if they were, that in and of itself is insufficient for them to remain as Defendants since Plaintiff has already received her requested

28   injunctive relief and was treated with DAA drugs in 2021. (ECF Nos. 20 at 12, 90-7 at 3.) The present case is only proceeding on monetary damages.

1    disagrees. Although Flores denied Plaintiff's grievance in 2016 because her lab values

2    did not meet the criteria for further treatment or medication, Flores was merely following

3    NDOC protocol under the prior version of MD 219. (ECF Nos. 88-1 at 8, 88-8 at 2-3.)

4    Similarly, Clark also denied Plaintiff's grievance because her lab values did not meet the

5    criteria for further action. (ECF No. 88-1 at 5.) As nurses, there is no evidence to suggest

6    that Flores and Clark sat on the committee that made treatment decisions for inmates,

7    had any decision-making power to dictate Plaintiff's treatment, could change NDOC policy

8    for Hep-C treatment, and could actually remedy the underlying issue. (ECF Nos. 88-3,

9    88-8.) *See Stewart v. Warner*, Case No. C15-5243 RBL-KLS, 2016 WL 1104893, at *5

10   (W.D. Wash. Feb. 29, 2016), *report and recommendation adopted by* 2016 WL 1089974

11   (W.D. Wash. Mar. 21, 2016) (finding an absence of personal participation for nurses who

12   denied the plaintiff's grievances because "none of these defendants served on the CRC

13   which made the determination regarding [the plaintiff's] neurology consultation request"

14   and "none of the defendants had any medical decision making authority over [the

15   plaintiff's] care"); *see also Countryman*, 2022 WL 17406341, at *10 (citations omitted).

16   Thus, Flores and Clark's mere denial of Plaintiff's grievances, without any decision-

17   making authority to resolve the underlying issue, does not suffice for personal

18   participation.

19          Finally, Plaintiff argues that Defendant Aranas, the former NDOC Medical Director

20   appointed in 2013, personally participated in the alleged Eighth Amendment violation.[12]

21   (ECF No. 95 at 26.) The Court agrees. Aranas was responsible for "the formulation of

22   health policy" which included "developing and monitoring standards and procedures for

23

---

24          [12]In her response, Plaintiff presents arguments that Dr. Minev, the current NDOC
25   Medical Director, participated in the alleged constitutional violation. (ECF No. 95 at 26.)
     However, Dr. Minev is not a named Defendant in this lawsuit and Plaintiff did not make
26   any specific allegations against Dr. Minev in her Amended Complaint, filed January 2019.
     (ECF Nos. 20, 88, 99, 103.) Dr. Minev's personal participation was raised for the first time
27   by Plaintiff in her opposition to the Motion. (ECF No. 95.) The Court denies any request
     to replace Defendant Aranas with Dr. Minev in his official capacity since, as explained
28   below, this case is only proceeding against Aranas in his individual capacity because
     Plaintiff already received her requested injunctive relief. (ECF Nos. 20, 88-2.)

1  health care services" for all NDOC inmates. (ECF No. 88-10 at 2.) In his declaration,

2  Aranas represents that he did not deny medical care or medical treatment to Plaintiff and

3  other inmates. (*Id*. at 3.) Aranas's statement is directly contradicted by the record. First,

4  Aranas personally denied Plaintiff's grievance in 2017 because her APRI score of 1.3

5  "d[id] not require treatment" under the guidelines—guidelines that he created or helped

6  create. (ECF No. 88-1 at 10.) Second, Defendants admit that a committee of three senior

7  members of the medical department reviewed each Hep-C inmate and evaluated their

8  treatment options. (ECF No. 88 at 5.) Plaintiff specifically points to a 2016 version of MD

9  219, which Aranas personally signed and approved, where one of those senior committee

10  members was the NDOC Medical Director, *i.e*., Aranas himself since he served as NDOC

11  Medical Director from 2013 to 2018.[13] (ECF No. 88-9 at 2, 88-10 at 2, 95-2 at 22-23.)

12  When viewed in the light most favorable to Plaintiff, a reasonable jury could find

13  that Aranas was aware of Plaintiff's serious Hep-C condition, aware that she needed DAA

14  drugs, and aware of national or community guidelines that recommended DAA treatment

15  for *all* inmates, but still failed to provide Plaintiff with necessary treatment and prevent

16  further harm. (ECF No. 95-4 at 10.) *See Kaiser*, 793 F.2d at 1103; *Colwell*, 763 F.3d at

17  1070; *Snow*, 681 F.3d at 989; *see also Melnik*, 2021 WL 5768468, at *1 (finding there

18  was "significant evidence of Dr. Aranas's personal involvement" because he was "chair

19  of the two-person committee making approvals and handing down denials" and

20  responded to one of the plaintiff's grievances for treatment). A reasonable jury could also

21  find that Aranas was personally responsible for the delay because he formulated or

22  helped formulate NDOC directives that deprived Plaintiff of DAA drugs for years and

23  caused her Hep-C symptoms to worsen. (ECF No. 88-10 at 2.) *See Starr*, 652 F.3d at

24  1207. The Court therefore denies summary judgment in favor of Aranas.

[13]According to Dr. Minev, he has served as the NDOC Medical Director since October 1, 2018. (ECF No. 88-9 at 2.)

11

1    In sum, Defendants' Motion is granted as to Cox, Dzurenda, Gentry, Neven,

2  Flores, and Clark for lack of personal participation, and denied as to Aranas.[14] Plaintiff's

3  Objection is overruled as to Cox, Dzurenda, Gentry, Neven, Flores, and Clark, and

4  sustained as to Aranas.

5    **C.    Qualified Immunity**

6    Finally, Defendants argue that they are entitled to qualified immunity because other

7  circuit courts have found that the failure to promptly provide inmates with specific

8  treatment does not violate the Eighth Amendment, and Defendants had no authority to

9  order medications or medical treatment for Plaintiff. (ECF No. 88 at 11.) The Court

10 disagrees.

11    The doctrine of qualified immunity "balances two important interests—the need to

12 hold public officials accountable when they exercise power irresponsibly and the need to

13 shield officials from harassment, distraction, and liability when they perform their duties

14 reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In deciding whether a

15 government official is entitled to qualified immunity, the Court asks "(1) whether the

16 official's conduct violated a constitutional right; and (2) whether that right was 'clearly

17 established' at the time of the violation." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir.

18 2019) (citing *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc)).

19 However, the Court has discretion "in deciding which of the two prongs of the qualified

20 immunity analysis should be addressed first in light of the circumstances in the particular

21 case at hand." *Pearson*, 555 U.S. at 236.

22    Since Aranas is the sole remaining Defendant, the Court will exercise its discretion

23 and first address whether Aranas's conduct violated a constitutional right. *See id*. As

24 stated above, there is still a genuine dispute of material fact as to whether Aranas was

25 deliberately indifferent to Plaintiff's serious medical needs under the Eighth Amendment.

---

27  [14]The Court clarifies that the case will only proceed against Aranas in his individual
   capacity. Plaintiff has already received her requested injunctive relief (DAA treatment),
28  and a claim for monetary damages against an official sued in his official capacity is barred
   by the Eleventh Amendment. *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836,
   839 (9th Cir. 1997).

Therefore, it is uncertain at this point whether he violated a constitutional right, and Aranas is not entitled to qualified immunity at this time. Defendants' Motion is therefore denied as to qualified immunity.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiff's objection (ECF No. 102) to the Report and Recommendation of U.S. Magistrate Judge Carla L. Baldwin is overruled in part and sustained in part, as described herein.

It is further ordered that Judge Baldwin's Report and Recommendation (ECF No. 101) is rejected.

It is further ordered that Defendants' motion for summary judgment (ECF No. 88) is granted in part and denied in part. The motion is granted as to Defendants Dwight Neven, James Cox, James Dzurenda, Jo Gentry, Leilani Flores, and Beebe Clark; the motion is denied as to Defendant Aranas.

It is further ordered that under LR 16-5, the Court finds that it is appropriate to refer this case to Judge Baldwin to conduct a settlement conference. If the parties do not settle, the Joint Pretrial Order is due within 30 days of the date the settlement conference is held.

DATED THIS 25th Day of January 2023.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE